Office of New York State Attorney General v. LaSalle National Bank. Thank you. Good morning. Good morning. My name is Patrick Broderick. I'm joined by my colleague Steve Lazar. We represent the Defendant Appellant LaSalle National Bank. We bring this appeal because we respectfully think that the District Court erred when it found that Section 7 of the New York Foreclosure Abuse Prevention Act applies retroactively such that an enactment by the New York Legislature at the end of 2022 is now governing a foreclosure action brought all the way back in 2007. We think a retroactive reading of the statute is improper under the text of the statute, and we would respectfully submit that if it is found to apply retroactively, that that would run afoul of the United States Constitution. Section 7 of the Foreclosure Abuse Prevention Act stops a lender in a foreclosure case from arguing that a prior foreclosure action was brought without authority to bring it, without standing. New York law has been well settled that if a case is brought without standing, it does not operate to accelerate a mortgage loan obligation. Counsel, New York law, I want to ask you a question since you raised New York law, not so much about the issue of standing, but whether we even get to that issue. And that is, I understand every department except perhaps the Fourth Department that has looked at whether FAPA is retroactive has agreed that it is retroactive, that there is a retroactive application. And I understand that in the, in a recent case, the New York Court of Appeals declined certification. So I have a couple of questions on that issue. One is, can we look to the intermediate appellate court's decision that the Act has retroactive applicability and rely on that? This Court can consider New York appellate division decisions. We would respectfully submit that this Court is not bound by those decisions if the Court has reason to believe that the New York Court of Appeals would decide differently. And we think the New York Court of Appeals eventually will decide differently than the appellate divisions. That's what had happened. What if the New York Court of Appeals had taken certification since you've responded in that way? And I know that they declined certification due to the unique circumstances of that case. Do you think that this would be a case that perhaps the New York Court of Appeals would take or should take for certification? I think there's a higher likelihood this case would be accepted for certification, and I say that for one reason. I'm actually counsel in the other case, so I kind of know it. But the denial of certification, the refusal to answer the certified question was a one-liner, you know, just a deny, right? So the other side of that case, it's called the East Fork case, had argued in a letter brief that even if the Court of Appeals accepts the certified question, they shouldn't accept it because it's not going to lead to a final determination. In other words, the Second Circuit would have more work to do, and there's no point in taking a certified question if it's not going to finally, ultimately resolve the case. I can't say that that's why the Court of Appeals declined certification. I can tell you that's what the other side argued and apparently successfully.  How is that case different from this case in terms of an answer to the certified question resolving the entire case? Well, in this case, it's a different provision of FAPA. So in this case, we're dealing with Section 7 of the Foreclosure Abuse Prevention Act. The East Fork case dealt with Section 8, so it's a different section of the foreclosure. That's important because if you look at the legislative history for FAPA, it talks a lot about the New York Court of Appeals case in Engle. Engle had to do with Section 8 of FAPA about whether a discontinuance, a voluntary discontinuance of a foreclosure action operates to deaccelerate a mortgage loan. Engle did not address today's case, which is Section 7. In fact, footnote 8 of the Engle opinion specifically says that we're not here today to decide. This is the Court of Appeals talking in Engle. No argument was made here that the predecessor in interest lacked the authority to accelerate the maturity of the debt, and we therefore do not address that question. Do you think a court in a principled way could hold that one section was retroactive and the other wasn't? I would say none of it's retroactive, but I think a court could actually, based on the statutory text, which differs from section to section in some important ways. So I do think that you can actually argue that certain provisions are prospective only, other provisions. So your position is even if the other section is retroactive, this one isn't? Is that your argument to us? Correct. Correct. I think that there's a good argument to be made that the language used in this case, where it's talking about having to interpose timely defenses, that's impossible to do going back. So section 7 is talking about timely interposed defenses regarding standing. I would argue that's a prospective-looking set of words that can only be interpreted prospectively, not retrospectively. The other sections of FAPA have different language and could theoretically be interpreted to be retroactive. Is this Court of Appeals, the New York Court of Appeals, having declined to take certification in East Fork funding? That matter is now before the Court. Would this panel appropriately wait for that decision, or do you see this as sufficiently different not to require that? I think there are different issues raised here. I can tell you that just, I think it was yesterday, that this Court, Second Circuit panel, extended the time for supplemental briefing to two weeks from today, I think. So they're going to get extra briefing on that? Yes, that's normal. Okay. So there's going to be more prep, but I think the issues here are sufficiently different that this Court could issue a decision without waiting for the other panel to decide the East Fork funding case. Okay. We think that should the Court find that section 7 of FAPA does apply retroactively, we think it runs afoul of multiple provisions of the United States Constitution. One of the biggest ones would be, this is a mortgage interest we're talking about, and there's a case from 1934 called Blaisdell, which talks about mortgage interest. In that case, from 1934, it was in the heart of the Great Depression. Minnesota enacted a statute that made it harder for a lender to take a property to sale, and the Court, the United States Supreme Court in that case, found that was a violation of the Constitution because it violated, it changed the remedy available to a lender in a mortgage. And because you stretched out the time the lender had to wait to take possession of a property from a foreclosure sale, that was a violation of the Contracts Clause. And the Court said, nothing more material to the obligation than the means of enforcement. We think that the New York Foreclosure Abuse Prevention Act affects the means of enforcing a mortgage, therefore it's material to the contract, and therefore we think it runs afoul of the United States Constitution Contracts Clause. That's the amount of time. Seeing no further questions, you have reserved your two minutes for rebuttal. Thank you. May it please the Court. Mark Grubb for the New York State Office of the Attorney General. Longstanding principles of equity preclude litigants from refuting past representations to a court. However, the New York State Legislature found that in the aftermath of the mortgage foreclosure crisis, mortgage lenders routinely rushed to court with inadequate documentation and then sought to avoid the consequences of the statute of limitation by filing a new action and disavowing past representations that they or their predecessors or their agents made in prior foreclosure actions. Accordingly, the Legislature enacted FAPA, which in part clarified that mortgage lenders are bound by the same equitable principles as all other civil litigants. First, the Legislature intended that FAPA would have retroactive effect. As Judge noted, three of the four appellate divisions have expressly held that, the First Department in the Genovese case, the Third Department in the Lynch case that we sent in a 28-J letter, and for the Second Department, I would rely on the Wells Fargo v. Edwards decision that was decided on October 30th. As this Court said in East Fork Funding, uniform appellate division precedent should be followed absent persuasive data that the highest court of the state would decide otherwise. Your opponent seems to think that the New York Court of Appeals would decide otherwise, notwithstanding three of four departments finding it is retroactive. What is your response to that? We respectfully disagree. I'll start first with the text. And I want to talk about the difference between Section 4 and 8 in East Fork Funding and Section 7 in this case. And I agree with my friend here that they are different, but not in a way that helps his case. In fact, in East Fork Funding, banks counsel explicitly argued that Section 7 had more indicia of retroactive effect because it used the term prior action that was absent from Sections 4 and 8. And that's referenced in the East Fork Funding certification decision. I apologize. It's been published since. I have the unpublished version, and it's at Star 4. So do you – so in response to a question asked by Judge Bradley about whether this case should be behind the queue, if you will, from East Fork, if your position is the sections aren't all that different, then is it your position that we should wait to see how East Fork is decided? Well, we do think they're different because there is greater textual indicia of retroactivity for Section 7. And also one of the things that – Do you agree, then, with opposing counsel that we could go ahead and decide this case without waiting for East Fork? I think the Court could. I think it has discretion. I think there are situations where there's a related appeal, and it may not be directly dispositive, but it may be illuminating. And we've seen that in the appellate division cases where they may be talking about one particular section of FAPA, but their reasoning goes to FAPA as a whole because FAPA addressed a uniform problem, which was successive foreclosure actions that have been lingering since 2007, 2008, like this one. And there's different problem – different legal issues that cause that problem, and the different sections of FAPA respond to different problems. But the overall remedial intent of the statute is the same. And that's what the appellate division decisions – they basically parse the particular sections like this Court did in East Fork funding. The Court looked at the remedial intent of FAPA as a whole, looked at New York Court of Appeals interpretive principles in the Matter of Gleeson case, which addresses the particular interpretive tools that are used when the New York legislature enacts a statute that corrects a court of appeals decision. Or in this case, there were various appellate division decisions that went both ways, and the legislature wanted to clarify the law on estoppel and reject cases. The ones they cited are Green and Lagasse that held that a borrower has an affirmative burden to prove that a prior foreclosure action the plaintiff had standing. So that said, it depends how the East Fork funding panel respectively addresses the question. If it continues to look more narrowly at Section 4 and 8 by itself, then that will not be binding on this Court. If they look at Matter of Gleeson, as we've urged them to, and look at the remedial intent as a whole, then that would be instructive and potentially binding on this Court. If I could just address the due process argument with my remaining time, I'd just like to start with the general principle that both the Supreme Court of the United States and the New York Court of Appeals agree that the statute of limitations is a matter that goes to remedy, not fundamental rights. It's Chase Securities Court by the Supreme Court and the Brothers v. Florence by the New York Court of Appeals. And here there's not even an amendment to this statute of limitations, but a clarification of the accrual rules. And holding that, a lender cannot repudiate its past statements or statements made by a predecessor or agent such as a servicer. And that serves many rational purposes, one of which is to prevent burdens on the Court, particularly in this case. Before FAPA was enacted, this case was in a posture where there were cross motions for summary judgment and the Court held that there was a question of fact and they would need to engage in a fact-finding process to determine who actually held the note in 2007 when documents or old memories have faded. New York legislature recently wanted to avoid this problem and hold mortgage lenders to their past representations that they made in often uncontested proceedings that they had what is called, quote, standing, not Article III standing, but what New York courts have called standing to commence a claim. So that's essentially our argument. And I just also ask that the Court not reach the unpreserved contracts clause and takings clause arguments in this case. As we have all now seen, there's plenty of constitutional challenges to Foreclosure Abuse Prevention Act and there's plenty of cases where various arguments have been preserved, like the contracts clause issue in East 4 funding. So there's plenty of other cases where these issues can be resolved and they shouldn't be here where they haven't been preserved. So unless there's any further questions. I just have one question, but I would defer to my colleagues first. So my one question is, do you agree with your opposing counsel that perhaps this case might be the one that the New York Court of Appeals would find suitable to grant certification on? Do you agree that that would be a worthy pursuit or not? Well, I hesitate to read the minds of the New York Court of Appeals and what was stated. Do you agree that this case presents differently? It might be one where certification. I mean, it presents differently, but I'm not sure that it presents differently in a material way. And all I can say is that the effect of the New York Court of Appeals' decision to decline certification was to leave in place this consensus of the appellate division. Thank you. Thank you. Your Honor, I just wanted to quickly address a couple of the policy implication arguments that came up recently. The legislative history has been discussed by numerous opinions on the New York Foreclosure Abuse Prevention Act. And if you take a hard look at the legislative history, it really, FAPA really was a response to the Court of Appeals' decision in Engle. And that's what the remedial aspects of the legislation were geared towards. I would just reiterate that Engle is not applicable to Section 7. Engle did not decide whether or not an improperly brought foreclosure can operate as an acceleration. Engle was a deacceleration case. And so the policy reasons behind finding retroactivity to address Engle simply don't apply to Section 7. In addition, some of the alleged foreclosure abuses addressed in the legislative history simply aren't present here. The borrower, the person, the homeowner, sold this property a very long time ago. The litigant that my client is now up against is a real estate investor that purchased the property subject to a mortgage. So we're not dealing with a person fighting to hold their residence. That's not present here. We're dealing with an investor. And in addition, there have not been successive foreclosure actions, one after another brought against the same borrower, which arguably could be considered harassing. There's only been one case. That case was back in 2007. That case was brought but without standing to foreclose, and therefore we don't think the mortgage loan was accelerated. My client relied on it. Is that an issue of fact that might prevent an answer to a certification question from providing a resolution to this case? Well, the original decision by the district court was that it was an issue of fact as to whether or not the servicing company had standing or not. So in that sense, it would go back. So it's an open issue. That would be an open issue, yes. Thank you, Your Honor. Thank you. Thank you, both sides. We will take the matter, reserve decision on the matter.